1  MARIO N. ALIOTO, ESQ. (SB# 56433)
   TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2  2280 Union Street
   San Francisco, CA 94123
3  Telephone: (415) 563-7200
   Facsimile: (415) 346-0679
4

5  Joseph M. Patane (SB# 72202)
   LAW OFFICES OF JOSEPH M. PATANE
6  2280 Union Street
   San Francisco, CA 94123
7  Telephone: (415) 563-7200                    E-Filing
   Facsimile: (415) 346-0679
8

9  Attorneys for Plaintiff

10

11                UNITED STATES DISTRICT COURT

12               NORTHERN DISTRICT OF CALIFORNIA

13  LAWRENCE LANG, on behalf of himself and          Case No. 05 2957 MEJ
14  all others similarly situated,
                                          )
15              Plaintiff,                )    CLASS ACTION COMPLAINT
                                          )
16  vs.                                   )
                                          )
17  INTEL CORPORATION, a Delaware          )    JURY TRIAL DEMANDED
    Corporation,                          )
18                                        )
                Defendant.                )
19                                        )
                                          )
20  _____  )

21               CLASS ACTION COMPLAINT

22       Plaintiff Lawrence Lang, individually and on behalf of all others similarly situated, brings

23  this action for treble damages, injunctive relief, disgorgement, restitution, and costs of suit

24  against Intel Corporation, and alleges:

25               JURISDICTION AND VENUE

26       1.      This action arises under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15

27  and 26, to obtain injunctive relief and to recover damages and the costs of suit, including

28  reasonable attorneys' fees, for the injuries sustained by plaintiff and the members of the class

                              1
                     CLASS ACTION COMPLAINT

1  which it represents resulting from violations by Intel and its co-conspirators, as hereinafter
2  alleged, of § 2 of the Sherman Act, 15 U.S.C. § 2.

3      2.    Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1332 (as
4  amended) and 1337. The Court also has supplemental jurisdiction of the pendent state law claims
5  under 28 U.S.C. § 1367.

6      3.    The defendant named in this Complaint, Intel Corporation ("Intel"), transacts
7  business, maintains an office or is found within this District, and Intel is within the jurisdiction of
8  this Court for the purpose of service of process. The interstate commerce described hereinafter is
9  carried on, in part, within this district. At all relevant times, the Intel marketed and sold x86
10  microprocessors indirectly to purchasers in this district.

11      4.    Venue is laid in this District pursuant to 15 U.S.C. § 22 and 28 U.S.C. § 1391.
12  Intel's unlawful schemes designed to maintain their monopoly in the x86 microprocessor market,
13  as further alleged herein, were carried out, in part, in this District. Intel and its subsidiaries are
14  registered and qualified to do business in this District and a substantial part of the events giving
15  rise to Plaintiff's claims occurred, and a substantial portion of the affected portion of the
16  interstate trade and commerce described below has been carried out in this district.

17                    **DEFINITIONS**

18      5.    A general-purpose 'microprocessor" is an integrated circuit capable of executing
19  a menu of instructions and performing requested mathematical computations at very high speed.
20  Microprocessors are defined by their instruction set—a computer's machine language
21  instructions. Computer operating systems are software programs that perform those instructions
22  so the computer can perform meaningful tasks. Microprocessors evolved to provide 16-bit
23  capability (the original DOS processors); then, sometime later, 32-bit capability (allowing the
24  use of advanced graphical interfaces such as later versions of Windows), and now 64-bit
25  capability.

26      6.    The "Class Period" or "relevant period" means the four year period preceding the
27  filing of this Complaint.
28

                    **2**
                    **CLASS ACTION COMPLAINT**

1  7. "Person" means any individual, partnership, corporation, association, or other
2  business or legal entity.

3  **PLAINTIFF**

4  8. Plaintiff Lawrence Lang ("Lang"), is a California resident. During the relevant
5  period, Lang indirectly purchased an x86 microprocessor that was manufactured, distributed
6  and/or sold by Intel during the class period, and has been injured by reason of the antitrust
7  violations alleged in this Complaint.

8  **DEFENDANT**

9  9. Defendant Intel Corporation is a Delaware Corporation with its principal
10  executive offices in Santa Clara, California. Intel conducts business both directly and through
11  wholly-owned and dominated subsidiaries world-wide. Intel and its subsidiaries design, produce
12  and sell a wide variety of microprocessors, flash memory devices, and silicon-based products for
13  use in the computer and communications industries.

14  **DEFENDANTS AND CO-CONSPIRATORS**

15  10. Various other persons, firms and corporations, not named as defendants herein,
16  have participated as co-conspirators with Intel and have performed acts and made statements in
17  furtherance of the conspiracy and/or in furtherance of the anticompetitive, unfair or deceptive
18  conduct.

19  11. Whenever in this Complaint reference is made to any act, deed or transaction of
20  any corporation, the allegation means that the corporation engaged in the act, deed or transaction
21  by or through its officers, directors, agents, employees or representatives while they were
22  actively engaged in the management, direction, control or transaction of the corporation's
23  business or affairs.

24
25  **CLASS ACTION ALLEGATIONS**

26  12. Plaintiff brings this action on behalf of himself and as a class action under the
27  provision of Rule 23 of the Federal Rules of Civil Procedure on behalf of all members of the
28  following class:

3
CLASS ACTION COMPLAINT

1

2

3

4

All persons (excluding governmental entities, Intel, co-conspirators, their subsidiaries and affiliates) that indirectly purchased a microprocessor in the United States from Intel or any subsidiary or affiliate thereof, or any co-conspirator or any subsidiary or affiliate thereof, at any time during the last 4 years.

5

6

13.    This action has been brought and may properly be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

7

8

a.    The Class is ascertainable and there is a well-defined community of interest among members of the Class;

9

10

11

12

b.    Based upon the nature of trade and commerce involved and the number of indirect purchasers of x86 microprocessors, Plaintiff believes that the members of the Class number in the thousands, and therefore are sufficiently numerous that joinder of all Class members is not practicable;

13

14

15

16

c.    Plaintiff's claims are typical of the claims of the members of the Class because Plaintiffs indirectly purchased an x86 microprocessor from Intel or its co-conspirators, and therefore Plaintiff's claims arise from the same common course of conduct giving rise to the claims of the members of the Class and the relief sought is common to the Class;

17

18

d.    The following common questions of law or fact, among others, exist as to the members of the Class:

19

20

i.    Whether Intel formed and operated a combination or conspiracy to fix, raise, maintain, or stabilize the prices of, or allocate the market for, microprocessors;

21

22

23

ii.    Whether the combination or conspiracy caused microprocessor prices to be higher than they would have been in the absence of Intel's conduct;

24

iii.    The operative time period of Intel's combination or conspiracy;

25

26

iv.    Whether Intel's conduct caused injury to the business or property of plaintiff and the members of the Class;

27

28

v.    The appropriate measure of the amount of damages suffered by the Class;

4
CLASS ACTION COMPLAINT

vi.    Whether Intel's conduct violates Sections 2 of the Sherman Act;

vii.   Whether Intel's conduct violates Section 3 of the Clayton Act;

viii.  Whether Intel's conduct violates Sections 16720 and 17200 of the California Business and Professions Code;

ix.    Whether Intel's conduct violates the antitrust, unfair competition, and consumer protection laws of the other states alleged below; and

x.     The appropriate nature of class-wide equitable relief.

e.    These and other questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages;

f.    After determination of the predominate common issues identified above, if necessary or appropriate, the Class can be divided into logical and manageable subclasses;

g.    Plaintiff will fairly and adequately protect the interests of the Class in that Plaintiff has no interests that are antagonistic to other members of the Class and has retained counsel competent and experienced in the prosecution of class actions and antitrust litigation to represent him and the Class;

h.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual joinder of all damaged Class members is impractical. The damages suffered by the individual Class members are relatively small, given the expense and burden of individual prosecution of the claims asserted in this litigation. Thus, absent the availability of class action procedures it would not be feasible for Class members to redress the wrongs done to them. Even if the Class members could afford individual litigation, the court system could not. Further, individual litigation presents the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and the court system. Therefore, the class action device presents far fewer case management difficulties

1  and will provide the benefits of unitary adjudication, economy of scale and comprehensive
2  supervision in a single court;

3       i.     Intel has acted, and/or refused to act, on grounds generally applicable to
4  the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole;
5  and

6       j.     In the absence of a class action, Intel would be unjustly enriched because
7  it would be able to retain the benefits and fruits of its wrongful conduct.

8  ## INTERSTATE TRADE AND COMMERCE

9  14.    Intel's activities, as described herein, were within the flow of, and substantially
10 affected interstate commerce.

11 15.    During the period of time covered by this Complaint, Intel sold and distributed
12 microprocessors throughout the United States.

13 16.    In connection with the manufacturing, distributing, selling and marketing of
14 microprocessors, Intel has used instrumentalities of interstate commerce to sell, distribute and
15 market microprocessors.

16 17.    Sales of microprocessors in the United States total billions of dollars annually.

17 ## FACTUAL BACKGROUND

18 18.    When IBM defined the original PC standards in the early 1980s, it had available
19 to it a variety of microprocessors. IBM opted for the Intel architecture, which utilized what
20 became known as the x86 instruction set. However, IBM was unwilling to be consigned to a
21 single source of supply, and demanded that Intel contract with Advanced Micro Devices, Inc.
22 ("AMD") and license it to manufacture x86 chips as a second source. AMD agreed to abandon
23 its own competing architecture and undertook to manufacture x86 chips as a second source of
24 supply.

25 19.    However, Intel's true objective was to become the sole-source for the x86
26 microprocessor. To fully realize its objective, Intel engaged in an elaborate and insidious scheme
27 to mislead AMD (and the public) into erroneously believing that AMD would be a second
28

**6**
**CLASS ACTION COMPLAINT**

1  source, thereby keeping AMD from competing with Intel. Intel's conduct drained AMD's
2  resources, delayed AMD's ability to reverse-engineer or otherwise develop and manufacture
3  competitive products, and deterred AMD from pursuing relationships with other firms. This
4  injured competition by deterring and impeding serious competitive challenges to Intel. AMD
5  commenced arbitration proceedings against Intel because of these actions. In 1992, after five
6  years of litigation, an arbitrator awarded AMD more than $10 million plus pre-judgment interest
7  and a permanent, non-exclusive and royalty-free license to any Intel intellectual property
8  embodied in AMD's own x86 microprocessor, including the x86 instruction set. This award was
9  confirmed by the California Supreme Court in *Advanced Micro Devices, Inc. v. Intel Corp.*, 9
10 Cal. 4th 462 (1994).

11     20.     Thereafter, AMD reinvented itself and in 1999 delivered its first x86 chip without
12 Intel pin-compatibility, the Athalon microprocessor. AMD thereby beat Intel to market with a
13 new generation Windows microprocessor, which was superior technologically to the Intel
14 version.

15     21.     AMD went on to be the first to bring to market its Opteron microprocessor for
16 servers (the computers used by businesses to run corporate networks, e-commerce websites and
17 other high-end, computationally-intense applications). Opteron was the industry's first x86
18 backward compatible 64-bit chip. Six months later, AMD launched the Athalon64, a backward
19 compatible 64-bit microprocessor for desktops and mobile computers. In this way, AMD has
20 seized technological leadership in the microprocessor industry, and has been recognized as such
21 with 70 technology leadership and industry awards, culminating in April 2005, when it was
22 named "Processor Company of 2005", at an Intel-sponsored industry awards show.

23     22.     AMD's market share has not kept pace with its technical leadership. Intel's
24 misconduct, laid out below, is the reason.

25                    **THE x86 MICROPROCESSOR INDUSTRY**

26     23.     Intel has a dominant position in the personal computing industry because the x86
27 version of dominant Windows and Linux operating systems have produced a huge installed base
28 of Windows and Linux-compatible programs that can only run the x86 instruction set. Non-x86

microprocessors are not reasonably interchangeable with x86 microprocessors because none can run the x86 Windows or Linux operating systems or the application software written for them.

24. The relevant market in which to assess Intel's position is x86 microprocessors because a putative monopolist in this market would be able to raise the prices of x86 microprocessors above a competitive level without losing so many customers to other microprocessors manufacturers as to make this increase unprofitable. While existing end-users can theoretically shift to other operating-system platforms, high switching costs associated with replacing hardware and software make this impractical. The number of new, first-time users who could choose a different operating-system platform is too small to prevent an x86 microprocessor monopolist from imposing a meaningful price increase for a non-transitory period of time. Computer manufacturers would also encounter high switching costs in moving from x86 processors to other architectures, and no major computer maker has ever done it. In short, demand is not cross-elastic between x86 microprocessors and other microprocessors at the competitive level.

25. The relevant geographic market for x86 microprocessors in which to asses Intel's position is the United States, a submarket of the worldwide geographic market. Intel and AMD compete globally and nationally. Microprocessors can be easily and inexpensively shipped globally and nationally, and frequently are. The potential for arbitrage prevents chipmakers from pricing processors differently in different countries or different parts of the United States.

26. Intel dominates the worldwide x86 Microprocessor Market. Over the past several years it has consistently achieved more than a 90% market share as measured by revenue, while AMD's revenue share has remained at approximately 9%, with other microprocessor manufacturers relegated to less than 1%. Intel has captured at least 80% of the worldwide x86 microprocessor unit sales in seven of the last eight years. Since 1999, AMD's worldwide volume has been approximately 15%.

27. The majority of x86 microprocessors are sold to a handful of large (Tier One) OEMs (original equipment manufacturers): Hewlett Packard ("HP"), which now owns Compaq Computer; Dell, Inc.; IBM; Gateway/eMachines; and Fujitsu/Fujitsu Siemens, Toshiba, Acer,

1   NEC and Sony are also commonly viewed as Tier One OEMs in the notebook segment of the PC
2   market. The balance of x86 microprocessors are sold to smaller system builders and to
3   independent distributors. The latter, in turn, sell to small OEMs, regional computer assemblers,
4   value-added resellers and other, smaller distributors. Currently, distributors account for over half
5   of AMD's sales.

6                              **INTEL'S UNLAWFUL PRACTICES**

7       28.     Intel has unlawfully maintained its x86 microprocessor monopoly by engaging in
8   a relentless, worldwide campaign to coerce customers to refrain from dealing with AMD that has
9   resulted in consumers paying higher prices for x86 microprocessors and left them with fewer
10  buying choices for such microprocessors. Among other things:

    a.  Intel has forced major direct customers (OEMs) into exclusive and near-
       exclusive deals;

    b.  Intel has conditioned rebates, allowances, and market development funding on
       direct customer's agreement to severely limit or forego entirely purchases
       from AMD;

    c.  Intel has established a system of discriminatory, retroactive, first-dollar
       rebates triggered by purchases at such high levels as to have the practical and
       intended effect of denying customers the freedom to purchase any significant
       volume of processors from AMD;

    d.  Intel has threatened retaliation against direct customers introducing AMD
       computer platforms, particularly in strategic market segments;

    e.  Intel has established and enforced quotas among key retailers effectively
       requiring them to stock almost exclusively, if not exclusively, Intel-powered
       computers, thereby artificially limiting consumer choice;

    f.  Intel has forced PC makers and technology partners to boycott AMD product
       launches and promotions; and

1
2
3
    g. Intel has abused its market power by forcing on the industry technical standards and products which have as their central purpose the handicapping of AMD in the marketplace.

4    29.    Intel's economic coercion of customers extends to all levels—from large
5    computer makers like Hewlett-Packard and IBM to small system-builders to wholesale
6    distributors to retailers such as Circuit City. All must either accept conditions that exclude AMD
7    or suffer discriminatory pricing and competitively-crippling treatment. In this way, Intel has
8    avoided competition on the merits and deprived AMD of the opportunity to stake its prices and
9    quality against Intel's for every potential microprocessor sale.

10    30.    In response to AMD's technology advances in recent years, Intel's conduct
11    became increasingly egregious, increasing exploitation of its market power to pressure customers
12    to refrain from migrating to AMD's superior, lower-cost microprocessors.

13    31.    The Japanese government recognized these competitive harms when on March 8,
14    2005, its Fair Trade Commission (the "JFTC") recommended that Intel be sanctioned for its
15    exclusionary misconduct directed at AMD. Intel chose not to contest these charges. The
16    European Commission has also recently stepped up its investigation of Intel's marketing
17    practices. On July 12, 2005, it was confirmed that the Commission had conducted raids against
18    Intel in Europe.

19                        **EFFECTS OF INTEL'S MISCONDUCT**

20    32.    Intel's conduct has caused computer manufacturers to continue to buy most of
21    their requirements from Intel, continue to pay monopoly prices, continue to be exposed to Intel's
22    economic coercion, and continue to submit to artificial limits Intel places on their purchases from
23    AMD. With AMD's opportunity to compete thus constrained, the cycle continues, and Intel's
24    monopoly profits continue to accrue.

25    33.    Consumers such as Plaintiff and the Class members ultimately foot this bill, in the
26    form of inflated PC prices, and the loss of freedom to purchase computer products that best fit
27    their needs. Consumers are worse off for lack of innovation that only a truly competitive market
28    can drive.

## VIOLATIONS ALLEGED

### First Claim for Relief

### (Violation of Section 2 of the Sherman Act)

34. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

35. The x86 Microprocessor Market is a relevant product market within the meaning of the antitrust laws.

36. The relevant geographic market is worldwide and a relevant geographic submarket is the United States.

37. Intel possesses monopoly power in the relevant market, maintaining a market share of over 90% by revenue and 80% by unit volume.

38. Substantial barriers to entry and expansion exist in the relevant market.

39. Intel has the power to control prices and exclude competition.

40. Intel has engaged in conduct with anticompetitive effects:

    a. To unlawfully maintain and enhance its monopoly in the relevant market and to keep prices high; and

    b. To stifle competition and to eliminate consumer choice through unlawfully exclusionary behavior designed to keep ADM weak, undersized, and unable to achieve a minimum scale of operation to become a viable substitute for Intel with respect to significant customers, or to an essential portion of the market.

It has done so with intent to maintain its monopoly in the relevant market.

41. Intel has also combined and conspired with others, including others identified above, to monopolize the market for x86 microprocessors in the United States and elsewhere.

42. There is no legitimate business justification for Intel's conduct.

43. Plaintiff and the members of the class have been injured and will continue to be injured in their business and property by paying more for x86 microprocessors purchased indirectly from Intel and its co-conspirators than they would have and will pay in the absence of the combination and conspiracy, including paying more for personal computers and other

11
CLASS ACTION COMPLAINT

1 | products in which microprocessors are a component as a result of the higher prices paid for
2 | microprocessors by the manufacturers of those products.

3 |     44.    Plaintiff and the class are entitled to an injunction against Intel, preventing and
4 | restraining the violations alleged herein. Plaintiff and the members of the Class have no adequate
5 | remedy at law for Intel's ongoing or threatened conduct.

6 | ## Second Claim for Relief

7 | ### (Violation of the California Cartwright Act)

8 |     45.    Plaintiff incorporates and realleges, as though fully set forth herein, each and
9 | every allegation set forth in the preceding paragraphs of this Complaint.

10 |     46.    Intel's unlawful conduct was centered in, carried out, effectuated and perfected
11 | mainly within the State of California, and Intel's conduct within the State of California injured
12 | all members of the Class throughout the United States. Therefore, this claim for relief under
13 | California law is brought on behalf of all members of the Class, whether or not they are
14 | California residents.

15 |     47.    Intel and certain co-conspirators entered into and engaged in a continuing
16 | unlawful trust in restraint of the trade and commerce described above in violation of Section
17 | 16720, California Business and Professions Code. Intel and others have agreed, combined and
18 | conspired in violation of Section 16720 to monopolize the x86 microprocessor market through
19 | unlawful means.

20 |     48.    The aforesaid violations of Section 16720, California Business and Professions
21 | Code, consisted, without limitation, of a continuing unlawful trust and concert of action among
22 | the Intel and its co-conspirators.

23 |     49.    In formulating and carrying out the alleged agreement, understanding, and
24 | conspiracy, Intel and its co-conspirators did those things that they conspired to do, including but
25 | not limited to the acts, practices and course of conduct set forth above, and the following, among
26 | others:

27 |     a.  Entered arrangements for exclusive and near-exclusive dealing;
28 |     b.  Entered into arrangements for secret funding, rebates, and discounts;

12
CLASS ACTION COMPLAINT

1    c. Monitored and controlled the activities of AMD customers, sanctioning those

2    who acted contrary to the interests of Intel and its co-conspirators; and

3    d. Employed other mechanisms also designed to divert sales and customers away

4    from AMD or other competitors.

5    50.    The combination and conspiracy alleged herein has had the following effects,

6    among others:

7    a. Price competition in the sale of x86 microprocessors has been restrained,

8    suppressed, and/or eliminated in the State of California and throughout the

9    United States;

10   b. Prices for x86 microprocessors sold by Intel and its co-conspirators have been

11   fixed, raised, maintained, and stabilized at artificially high, non-competitive

12   levels in the State of California and throughout the United States; and

13   c. Those who purchased x86 microprocessors directly or indirectly from Intel

14   and its co-conspirators have been deprived of the benefits of free and open

15   competition.

16   51.    As a direct and proximate result of the illegal combinations, trusts, agreements,

17   understandings and concert of action, Plaintiff and the members of the Class have been injured,

18   and will continue to be injured in their business and property by paying more for x86

19   microprocessors purchased indirectly from Intel and its co-conspirators than they would have,

20   and will pay, in the absence of the combination and conspiracy, including paying more for

21   personal computers and other products in which microprocessors are a component as a result of

22   the higher prices paid for microprocessors by the manufacturers of those products.

23   52.    As a result of Intel's and it's co-conspirator's violation of Section 16720 of the

24   California Business and Professions Code, Plaintiff seeks treble damages and costs of suit,

25   including reasonable attorneys' fees, pursuant to Section 16750(a) of the California Business and

26   Professions Code.

27   //

28

1
## Third Claim for Relief

2
### (Violation of the California Unfair Competition Law)

3    53.    Plaintiff incorporates and realleges, as though fully set forth herein, each and

4  every allegation set forth in the preceding paragraphs of this Complaint.

5    54.    Intel's business acts and practices were centered in, carried out, effectuated and

6  perfected mainly within the State of California, and Intel's conduct within California injured all

7  members of the Class throughout the United States. Therefore, this claim for relief under

8  California law is brought on behalf of all members of the Class, whether or not they are

9  California residents.

10    55.    Intel has committed and continues to commit, acts of unfair competition, as

11  defined in Section 17200, *et seq.* of the California Business and Professions Code, by engaging

12  in the acts and practices specified above.

13    56.    This claim is instituted pursuant to Sections 17203 and 17204 of the California

14  Business and Professions Code, to obtain restitution from Intel and its co-conspirators for acts, as

15  alleged herein, that violated Section 17200 of the California Business and Professions Code,

16  commonly known as the Unfair Competition Law.

17    57.    Intel's conduct as alleged herein violated Section 17200. The acts, omissions,

18  misrepresentations, practices, and non-disclosures of Intel and its co-conspirators, as alleged

19  herein, constituted a common continuous course of conduct of unfair competition by means of

20  unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California

21  Business and Professions Codes, Section 17200, *et seq.*, including but not limited to, the

22  following:

23        a.    The violations of Section 2 of the Sherman Act, as set forth above;

24        b.    Violations of Section 3 of the Clayton Act (15 U.S.C. §14);

25        c.    The violations of Section 16720, *et seq.*, 17045, 17046, 17047, and 17048 of

26            the California Business and Professions Code;

27        d.    Intel's acts, omissions, misrepresentations, practices and non-disclosures, as

28            described above, whether or not in violation of Section 16720, *et seq.* of the

California Business and Professions Code, and whether or not concerted or
independent acts, are otherwise unfair, unconscionable, unlawful or
fraudulent;

    c. Intel's acts and practices are unfair to consumers of x86 microprocessors in
the State of California and throughout the United States, within the meaning of
Section 17200 of the California Business and Professions Code; and

    f. Intel's acts and practices are fraudulent or deceptive within the meaning of
Section 17200 of the California Business and Professions Code.

58. Plaintiff and each of the Class members are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Intel and its co-conspirators as a result of such business acts or practices.

59. The illegal conduct alleged herein is continuing and there is no indication that Intel will not continue such activity in the future.

60. The unlawful and unfair business practices of Intel, as described above, have caused and continue to cause Plaintiff and the members of the Class to pay supra-competitive and artificially inflated prices for Intel's x86 microprocessors. Plaintiff and the members of the Class suffered injury in fact and lost money or property as a result of such unfair competition.

61. The conduct of Intel as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

62. As alleged in this Complaint, Intel has been unjustly enriched as a result of its wrongful conduct and by Intel's unfair competition. Plaintiff and the members of the Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Intel as a result of such business practices, pursuant to California Business and Professions Code, Sections 17203 and 17204.

//

//

1

## Fourth Claim for Relief

2

## (Violation of California's Tort Law Against Monopoly)

3    63.    Plaintiff incorporates and realleges, as though fully set forth herein, each and

4  every allegation set forth in the preceding paragraphs of this Complaint.

5    64.    By virtue of the conduct described above, Intel has engaged in tortious and

6  unlawful monopolization of the x86 microprocessor market.

7    65.    Such conduct gives rise to a cause of action for common law monopoly under

8  California law.

9    66.    As a direct and proximate result of Intel's acts of monopolization alleged herein,

10  Plaintiff and the members of the Class have suffered actual damages in an amount to be proven at

11  trial.

12    67.    Intel's acts of monopolization described herein were intended to monopolize and

13  suppress competition in the relevant market and to injure customers. Intel's acts included acts of

14  fraud, malice, and oppression and were undertaken with conscious disregard of the rights of

15  consumers, including Plaintiff and members of the Class. Accordingly, an award of punitive

16  damages is justified in order to make an example of Intel, to punish it, and to deter others from

17  engaging in the same or similar conduct. Plaintiff and members of the Class seek an award of

18  punitive damages in an amount according to proof at trial.

19

## Fifth Claim for Relief

20

## (Violation of State Antitrust and Unfair Competition Laws)

21    68.    Plaintiff incorporates and realleges, as though fully set forth herein, each and

22  every allegation set forth in the preceding paragraphs of this Complaint.

23    69.    By reason of the foregoing, Intel has entered into agreements in restraint of trade

24  in violation of Alabama Code §§8-10-1, *et seq.*

25    70.    By reason of the foregoing, Intel has entered into agreements in restraint of trade

26  in violation of Arizona Revised Stat. §§44-1401, *et seq.*

27

28

16
CLASS ACTION COMPLAINT

1      71.     By reason of the foregoing, Intel has entered into agreements in restraint of trade

2   in violation of California Business and Professions Code §§ 16720 *et seq.* and California

3   Business and Professions Code §§ 17200 *et seq.*

4      72.     By reason of the foregoing, Intel has entered into agreements in restraint of trade

5   in violation of District of Columbia Code Ann. §§28-4503 *et seq.*

6      73.     By reason of the foregoing, Intel has entered into agreements in restraint of trade

7   in violation of Iowa Code §§ 553.1 *et seq.*

8      74.     By reason of the foregoing, Intel has entered into agreements in restraint of trade

9   in violation of Kansas Stat. Ann. §§ 50-101 *et seq.*

10      75.     By reason of the foregoing, Intel has entered into agreements in restraint of trade

11   in violation of Maine Rev. Stat. Ann. 10, §§ 1101 *et seq.*

12      76.     By reason of the foregoing, Intel has entered into agreements in restraint of trade

13   in violation of Michigan Comp. Laws Ann. §§445.773 *et seq.*

14      77.     By reason of the foregoing, Intel has entered into agreements in restraint of trade

15   in violation of Minnesota Stat. §§ 325 D.52 *et seq.*

16      78.     By reason of the foregoing, Intel has entered into agreements in restraint of trade

17   in violation of Mississippi Code Ann. § 75-21-1 *et seq.*

18      79.     By reason of the foregoing, Intel has entered into agreements in restraint of trade

19   in violation of Nebraska Rev. Stat. §§ 59-801 *et seq.*

20      80.     By reason of the foregoing, Intel has entered into agreements in restraint of trade

21   in violation of Nevada Rev. Stat. Ann. §§ 598A *et seq.*

22      81.     By reason of the foregoing, Intel has entered into agreements in restraint of trade

23   in violation of New Mexico Stat. Ann. §§ 57-1-1 *et seq.*

24      82.     By reason of the foregoing, Intel has entered into agreements in restraint of trade

25   in violation of North Carolina Gen. Stat. §§ 75-1 *et seq.*

26      83.     By reason of the foregoing, Intel has entered into agreements in restraint of trade

27   in violation of North Dakota Cent. Code §§ 51-08.1 *et seq.*

28

1       84.     By reason of the foregoing, Intel has entered into agreements in restraint of trade
2 in violation of Ohio Rev. Code Ann. §§13301.1 *et seq.*

3       85.     By reason of the foregoing, Intel has entered into agreements in restraint of trade
4 in violation of Pennsylvania common law.

5       86.     By reason of the foregoing, Intel has entered into agreements in restraint of trade
6 in violation of South Dakota Codified Laws Ann. §§37-1 *et seq.*

7       87.     By reason of the foregoing, Intel has entered into agreements in restraint of trade
8 in violation of Tennessee Code Ann. §§ 47-25-101 *et seq.*

9       88.     By reason of the foregoing, Intel has entered into agreements in restraint of trade
10 in violation of Vermont Stat. Ann. 9 §§ 2453 *et seq.*

11       89.     By reason of the foregoing, Intel has entered into agreements in restraint of trade
12 in violation of West Virginia §§47-18-1 *et seq.*

13       90.     By reason of the foregoing, Intel has entered into agreements in restraint of trade
14 in violation of Wisconsin Stat. §§ 133.01 *et seq.*

15       91.     Class members in each of the states listed above paid supra-competitive,
16 artificially inflated prices for Intel's x86 microprocessors. As a direct and proximate result of
17 Intel's unlawful conduct, Plaintiff and such members of the Class have been injured in their
18 business and property in that they paid more for x86 microprocessors than they otherwise would
19 have paid in the absence of Intel's unlawful conduct.

20                                       **Sixth Claim for Relief**

21         **(Violation of State Consumer Protection and Unfair Competition Laws)**

22       92.     Plaintiff incorporates and realleges, as though fully set forth herein, each and
23 every allegation set forth in the preceding paragraphs of this Complaint.

24       93.     Intel engaged in unfair competition or unfair, unconscionable, deceptive or
25 fraudulent acts or practices in violation of the state consumer protection and unfair competition
26 statutes listed below.

27       94.     Intel has engaged in unfair competition or unfair or deceptive acts or practices in
28 violation of Alaska Stat. §§45.50.471 *et seq.*

1       95.    Intel has engaged in unfair competition or unfair or deceptive acts or practices in

2 violation of Arkansas Code §§4-88-101 *et seq.*

3       96.    Intel has engaged in unfair competition or unfair or deceptive acts or practices in

4 violation of California Bus. & Prof. Code § 17200 *et seq.*

5       97.    Intel has engaged in unfair competition or unfair or deceptive acts or practices in

6 violation of District of Columbia Code § 28-3901 *et seq.*

7       98.    Intel has engaged in unfair competition or unfair or deceptive acts or practices in

8 violation of Florida Stat. § 501,201 *et seq.*

9       99.    Intel has engaged in unfair competition or unfair or deceptive acts or practices in

10 violation of Hawaii Rev. Stat. §480 *et seq.*

11       100.    Intel has engaged in unfair competition or unfair or deceptive acts or practices in

12 violation of Idaho Code §48-601 *et seq.*

13       101.    Intel has engaged in unfair competition or unfair or deceptive acts or practices in

14 violation of Kansas Stat. §50-623 *et seq.*

15       102.    Intel has engaged in unfair competition or unfair or deceptive acts or practices in

16 violation of Louisiana Rev. Stat. §51:1401 *et seq.*

17       103.    Intel has engaged in unfair competition or unfair or deceptive acts or practices in

18 violation of 5 Maine Rev. Stat. §207 *et seq.*

19       104.    Intel has engaged in unfair competition or unfair or deceptive acts or practices in

20 violation of Montana Code §30-14-101 *et seq.*

21       105.    Intel has engaged in unfair competition or unfair or deceptive acts or practices in

22 violation of Nebraska Rev. Stat. §59-1601 *et seq.*

23       106.    Intel has engaged in unfair competition or unfair or deceptive acts or practices in

24 violation of New Mexico Stat. §57-12-1 *et seq.*

25       107.    Intel has engaged in unfair competition or unfair or deceptive acts or practices in

26 violation of New York Gen. Bus. Law §349 *et seq.*

27       108.    Intel has engaged in unfair competition or unfair or deceptive acts or practices in

28 violation of North Carolina Gen. Stat. §75-1.1 *et seq.*

1    109.    Intel has engaged in unfair competition or unfair or deceptive acts or practices in
2    violation of Oregon Rev. Stat. §646.605 *et seq.*

3    110.    Intel has engaged in unfair competition or unfair or deceptive acts or practices in
4    violation of Rhode Island Gen. Laws §6-13.1-1 *et seq.*

5    111.    Intel has engaged in unfair competition or unfair or deceptive acts or practices in
6    violation of South Carolina Code Laws §39-5-10 *et seq.*

7    112.    Intel has engaged in unfair competition or unfair or deceptive acts or practices in
8    violation of Utah Code §13-11-1 *et seq.*

9    113.    Intel has engaged in unfair competition or unfair or deceptive acts or practices in
10   violation of 9 Vermont §2451 *et seq.*

11   114.    Intel has engaged in unfair competition or unfair or deceptive acts or practices in
12   violation of West Virginia Code §46A-6-101 *et seq.*

13   115.    Intel has engaged in unfair competition or unfair or deceptive acts or practices in
14   violation of Wyoming Stat. §40-12-105.

15   116.    Class members in the states listed above paid supra-competitive, artificially
16   inflated prices for x85 microprocessors. As a direct and proximate result of Intel's unlawful
17   conduct, Plaintiff and such members of the Class have been injured in their business and property
18   in that they paid more for x86 microprocessors than they otherwise would have paid in the
19   absence of Intel's unlawful conduct.

20                        **Seventh Claim for Relief**

21              **(Unjust Enrichment and Disgorgement of Profits)**

22   117.    Plaintiff incorporates and realleges, as though fully set forth herein, each and
23   every allegation set forth in the preceding paragraphs of this Complaint.

24   118.    Intel has been unjustly enriched through overpayments by Plaintiff and the Class
25   members and the resulting profits.

26   119.    Under common law principles of unjust enrichment, Intel should not be permitted
27   to retain the benefits conferred via overpayments by Plaintiff and the members of the Class.

28

                                   **20**
                       **CLASS ACTION COMPLAINT**

1    120.   Plaintiff seeks disgorgement of all profits resulting from such overpayments and
2  establishment of a constructive trust from which Plaintiff and the Class members may seek
3  restitution.

4                              **PRAYER FOR RELIEF**

5        WHEREFORE, Plaintiff prays as follows:

6        A.    That the Court determine that this action may be maintained as a class action
7  under Rule 23 of the Federal Rules of Civil Procedure;

8        B.    That the Court adjudge and decree that the unlawful conduct, contract,
9  combination and conspiracy alleged herein is:

10               a.  A violation of Section 2 of the Sherman Act, as alleged in the First Claim for
11                   Relief;

12               b.  An unlawful combination, trust, agreement, understanding, and/or concert of
13                   action in violation of the state antitrust laws identified in the Second and Fifth
14                   Claims for Relief herein;

15               c.  Violations of the state consumer protection and unfair competition laws
16                   identified in the Third and Sixth Claims for Relief herein;

17               d.  Violations of California's tort law against monopoly identified in the Fourth
18                   Claim for Relief herein; and

19               e.  Acts of unjust enrichment as set forth in the Seventh Claim for Relief herein.

20       C.    That judgment be entered against Intel, jointly and severally, and in favor of
21  Plaintiff and the Class it represents for damages as allowed by federal and state antitrust laws as
22  determined to have been sustained by them, together with costs of suit, including reasonable
23  attorneys' fees;

24       D.    That Intel, its co-conspirators, successors, transferees, assigns, parents,
25  subsidiaries, affiliates, and the officers, directors, partners, agents and employees thereof, and all
26  other persons acting or claiming to act on behalf of Intel, or in concert with them, be
27  permanently enjoined and restrained from, in any manner, directly or indirectly, continuing,
28  maintaining or renewing the combinations, conspiracy, agreement, understanding or concert of

1  action, or adopting or following any practice, plan, program or design having a similar purpose

2  or effect in restraining competition;

3  E.  That Plaintiff be awarded restitution, including disgorgement of profits obtained

4  by Intel as a result of its acts of unfair competition and acts of unjust enrichment;

5  F.  That the Court award Plaintiff and the class it represents pre-judgment and post-

6  judgment interest as permitted by law; and

7  G.  That the Court award Plaintiff and the Class it represents such other and further

8  relief as may be necessary and appropriate.

9  ## JURY DEMAND

10  Plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

11

12

13  Dated: July 20, 2005            By:  _Mario N. Alioto_

14  Mario N. Alioto (SB# 56433)
TRUMP, ALIOTO, TRUMP & PRESCOTT
15  2280 Union Street
San Francisco, CA 94123
16  Telephone: (415) 563-7200
Facsimile: (415) 346-0679
17
Joseph M. Patane (SB# 72202)
18  LAW OFFICES OF JOSEPH M. PATANE
2280 Union Street
19  San Francisco, CA 94123
Telephone: (415) 563-7200
20  Facsimile: (415) 346-0679
21
Attorneys for Plaintiff
22
23
24
25
26
27
28

22
CLASS ACTION COMPLAINT